Leon E. **PRENGER, Appellant,**

v.

James R. **MOODY, Commissioner, Office of Administration, Respondent.**

No. WD 45355.

Missouri Court of Appeals, Western District.

Dec. 29, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 22, 1992.

Ronald J. Prenger, Jefferson City, for appellant.

Melody Ann Emmert, General Counsel, Office of Admin., Jefferson City, for respondent.

Before TURNAGE, P.J., and BRECKENRIDGE and HANNA, JJ.

BRECKENRIDGE, Judge.

Leon E. Prenger appeals from a judgment of the circuit court affirming a decision of the Personnel Advisory Board (PAB) which affirmed Mr. Prenger's dismissal from his merit system position. Mr. Prenger presents three points on appeal claiming that the PAB erred in: (1) finding that his dismissal was for the good of the service because said finding was not based upon substantial and competent evidence; (2) finding that his dismissal was for good cause as said finding was not based upon substantial and competent evidence; and (3) finding that the Office of Administration fulfilled the mandatory procedural requirements and procedural due process requirements concerning his dismissal. The judgment is affirmed.

Leon Prenger was hired by the Office of Administration (OA) in July, 1981, to manage its vehicle maintenance department. The OA garage services over 400 state-owned vehicles each month. Mr. Prenger was in charge of the day-to-day operation of the garage. His responsibilities included supervising the other employees, working on vehicles, maintaining sufficient supplies and parts, and procuring supplies and parts. He was responsible for making pur-

chases totaling between $200,000 and $300,000 annually from a revolving fund of the Division of General Services. His usual purchases were large quantities of gasoline, tires, motor oil and auto parts. He was responsible for securing bids upon a portion of these items before awarding a purchase order, but was not required to submit documentation to his supervisor before sending a payment request for processing to the Division of Accounting, Staff Services Section, and then to the Division of Purchasing.

Mr. Prenger's authority to award local purchase orders stemmed from the delegation by the Division of Purchasing of a portion of its purchasing authority to state agencies, including the OA. The Division of Purchasing's required methods for awarding local purchase orders were outlined in a written purchasing procedure, PD–71. Under the guidelines, the cost of the item or items being purchased determines the applicable procedure. A purchase of under $100 can be made without soliciting bids. If the purchase is between $100 and $2000, three bids have to be procured by telephone, by mail, in person, from catalogs and published price lists, or by any combination thereof. The agency is required to identify which method was utilized in the "Bid Record" attached to the bid. If the cost of the item or items to be acquired exceeds $2000, it is necessary for the Division of Purchasing rather than the agency to solicit the bids. The policies prohibit splitting purchase orders by issuing two or more orders to the same vendor to avoid the $2000 limit. A copy of PD–71 was distributed to Mr. Prenger on October 3, 1985, a short time after its adoption.

In January, 1990, the Deputy Commissioner of the OA, John Boehm, discovered that one of the mechanics at the OA garage was using his own tools to work on state vehicles. Mr. Boehm told Mark Kaiser, the Assistant Director of General Services, to purchase tools so the mechanic could take his personal tools home. Mr. Kaiser instructed Mr. Prenger to purchase the tools "right away."

Rather than using funds from the revolving fund from which Mr. Prenger had made all of his previous purchases, the funds to cover the purchase of tools were to come from general revenue funds. Mr. Prenger had no authority to authorize purchases using this fund so Mr. Kaiser had to approve the procurement documents. The mechanics for making purchases from the general revenue funds were identical to the bid process for the revolving fund frequently utilized by Mr. Prenger, except for the necessity of obtaining Mr. Kaiser's approval.

Having been authorized by Mr. Kaiser, Mr. Prenger solicited bids from three equipment vendors, Jeff City (J.C.) Auto Parts, P & L Distributors and Capital Auto Parts. J.C. Auto Parts' bid was put together from their catalog, less a 10% discount. P & L Distributors submitted a handwritten bid which was then typed by someone at the OA garage on P & L Distributors' letterhead. Capital Auto Parts submitted a bid it had typed on its letterhead.

Each of the three bids totaled in excess of $2000, the ceiling figure of Mr. Prenger's purchasing power. As a result, the purchase of tools should have been turned over to the Division of Purchasing to handle the bidding process. Desiring to act quickly, per his instructions to purchase the tools "right away," Mr. Prenger investigated the feasibility of breaking down the bids into three separate purchases of hand tools, power tools and frame equipment. Mr. Prenger was not familiar with the regulations and practices for aggregating purchases for purposes of determining the applicability of the $2000 purchasing limit. After discussing the matter with Stan Perovich, Director of General Services, and Mr. Kaiser, Mr. Prenger was instructed to check with the Division of Purchasing before treating the matter as three separate purchases. Mr. Prenger failed to seek guidance from the Division of Purchasing for the specific details of the contemplated purchase.

Leroy Pritchett, the owner of P & L Distributors, initially submitted a bid for

the tools based upon all new equipment. With permission from Mr. Prenger, he later substituted a used item, a Black Hawk 10-ton pulling post. P & L Distributors submitted a new bid, reflecting a lower price for the used pulling post and adding a cost of $270.00 for the labor necessary to install the post. The other bidders, J.C. Auto Parts and Capital Auto Parts were not notified that used equipment would be acceptable. Therefore, they were not given the opportunity to submit a bid for used equipment; nor were bids for used equipment solicited from other vendors.

Mr. Prenger decided to break the bids down into three categories. He instructed a work release inmate, who did typing at the OA garage, to type three lists for each bidder showing three categories of equipment. Mr. Prenger designated which items were to be included in each of the categories. The bids were divided into groups of hand tools, power tools, and frame equipment.

P & L Distributors supplied its own forms to be used for the division of its bid. J.C. Auto Parts and Capital Auto Parts were not contacted by Mr. Prenger for permission to split their original bids, nor were they contacted to determine whether splitting their bids would affect the price. The stationery used by the OA garage for retyping the Capital Auto Parts' bid was created by placing a sheet of paper over the original bid and running it through a copy machine so that the bottom part of the page below the letterhead was clear.

The record does not include the bids as originally submitted to the OA garage. Although the OA's Exhibit "G" was referred to as P & L Distributors' original bid, it included the used pulling post rather than the new pulling post, so it would not have been the original bid. The record is void of evidence of the amount of P & L Distributors' original bid with the price of a new pulling post. Copies of the retyped bids for all three vendors were a part of the record on appeal.

When the bids were separated into the three groups, P & L Distributors' bid on the power tools was $1445.28, compared to Capital Auto Parts' bid of $1464.04 and J.C. Auto Parts' bid of $1627.28. The bids on hand tools were P & L Distributors' bid of $892.50, Capital Auto Parts' bid of $894.81, and J.C. Auto Parts' bid of $904.53. With regard to the framing equipment for the body shop, P & L Distributors' bid of $1861.50 was the lowest bid when compared to identical bids of Capital Auto Parts and J.C. Auto Parts in the amount of $3,231.00. The identical retyped bids of J.C. Auto Parts and Capital Auto Parts for the framing equipment included a labor charge of $540 for installing the pulling post. There was no labor charge included on the original bid of J.C. Auto Parts and there was no evidence that J.C. Auto Parts submitted the figure of $540 for inclusion on the retyped bid.

P & L Distributors was the successful bidder in all three categories. Mr. Prenger advised Leroy Pritchett that P & L Distributors had the low bids and Mr. Pritchett delivered all of the items to the OA garage.[1] Mr. Pritchett testified that he had no objection to his bid being split and that this did not change the amount of his bid even though smaller lots usually result in higher bid prices. Mr. Pritchett denied that there was any bid steering and believed that he was the successful bidder because he bid the lowest price.

After Mr. Prenger had obtained the tools, he submitted to Mr. Kaiser for approval the procurement documents with the three separate bids for each vendor, as typed by the work-release inmate, attached. Mr. Prenger identified the bids as three separate written bids which had been solicited and received from the vendors. The attached "Bid Records" and summaries also indicated that written bids were received from all three vendors for each of the three groups of tools. Mr. Kaiser initialed and placed code numbers upon the invoices signifying his approval that pay-

1. Mr. Pritchett picked up the tools from the OA garage after being notified that his bids were rejected by Staff Services.

ment be made from the general revenue funds.

Questions about bid splitting were raised when Mr. Kaiser submitted the documents to Staff Services for payment. An investigation resulted and it was found that Mr. Prenger had created false bid documents. A letter of dismissal was prepared and Mr. Prenger received this letter on May 2, 1990. The letter informed him that he was being dismissed from his employment effective May 7, 1990. It stated the following reasons for the dismissal:

This action is taken because you submitted false bid documents supporting three local purchase orders for tools and equipment each dated April 9, 1990. You caused false bid documents to be created to support the purchase of tools and equipment for each of the three local purchase orders, and submitted the false bid documents as original written bids for each of the three local purchase orders though you knew the documents were false.

Mr. Prenger appealed to the PAB, which approved the dismissal after making the following findings:

    \*     \*     \*     \*     \*     \*

4. After considering all the evidence, the Board finds that the Appointing Authority has established by competent and substantial evidence, by the evidence as a whole, and by a preponderance thereof, that the Appellant caused false bid documents to be created to support the purchase of three categories of tools and equipment. The Appellant had been authorized to seek bids for tools and equipment to be used in the maintenance garage. The Appellant solicited those bids from three different vendors, each for the entire group of tools to be purchased. The Appellant was aware that purchases in aggregate exceeding $2,000 were required by regulations to be administered by the Division of Purchasing. In order to expedite the purchase, the Appellant, without the consent of two of the vendors, caused the bids for the single group of tools to be broken down into separate bids for three separate groups of tools,

each group amounting to a purchase of less than $2,000. The Appellant submitted these three groups of separate bids to his supervisor as if three separate bids had been solicited and received. When the bids were submitted to the Division of General Services for processing as local bids, they were rejected as not being made in proper form and no purchase was made on the basis of those bids.

5. The Appellant was not familiar with the regulations and practices in aggregating purchase groups for the purpose of applying the $2,000 limitation. The Appellant was directed by his supervisor to contact the Division of Purchasing and obtain guidance on the proper categorization, preparation and solicitation of such bids. The Appellant failed to seek guidance from the Division of Purchasing for the specific details of the contemplated purchase.

6. From the foregoing, the Board concludes that the Appellant was incompetent, inadequate, careless or inefficient in the performance of the duties of his position.

Mr. Prenger filed for review of the PAB's decision in the circuit court. The circuit court affirmed the PAB's decision. Mr. Prenger now appeals from that decision.

■■■ The decision of the PAB is reviewed as if it had been directly appealed to this court. *Fujita v. Jeffries,* 714 S.W.2d 202, 204 (Mo.App.1986). Review of the evidence is done in the light most favorable to the agency's decision. *Lebedun v. Robinson,* 768 S.W.2d 219, 222 (Mo.App. 1989). A reviewing court does not consider the matter as an original proposition, but must defer to the findings of fact of the administrative tribunal. *Percy Kent Bag Co. v. Missouri Com'n, Etc.,* 632 S.W.2d 480, 487 (Mo. banc 1982). A court, whether circuit or appellate, is not permitted to substitute its judgment for that of the PAB. *Id.* Such decision will be upheld unless it exceeds agency authority; is not based upon substantial and competent evidence on the record as a whole; is unreasonable, arbitrary or capricious; involves an abuse

of discretion; or is otherwise unlawful. Section 536.140, RSMo 1986;[2] *Lebedun*, 768 S.W.2d at 222.

In Point I, Mr. Prenger challenges that his dismissal was for the good of the service because it was not based on competent and substantial evidence of personal misconduct or on some fact which would render his continued employment contrary to the public interest. Under Point I, he asserts a lack of competent and substantial evidence in three respects. Mr. Prenger claims that: (1) there was no evidence that the appointing authority determined termination was required for efficient administration and for the good of the service; (2) the PAB found that the termination was for the good of the service, but did not make the necessary finding that termination was required in the interests of efficient administration; and (3) that the PAB's finding that termination was for the good of the service was against the overwhelming weight of the evidence.

Section 36.380 states that "An appointing authority may dismiss for cause any employee in his division occupying a position subject hereto when he considers that such action is required in the interests of efficient administration and that the good of the service will be served thereby." Section 36.390.5 permits an appeal to be taken to the PAB by an employee "claiming that the dismissal ... was for political, religious, or racial reasons, or not for the good of the service." Mr. Prenger does not claim that his dismissal was for political, religious or racial reasons. He argues instead that it was not for the good of the service. The standard "for the good of the service" is not defined in the statutes. However, in *Anderson v. Personnel Advisory Bd.*, 586 S.W.2d 738, 742 (Mo.App. 1979), the standard is discussed by the court as follows:

> Appellant argues that his dismissal was not for "cause" because the action attributed to him did not amount to "personal misconduct." He relies upon *State ex rel. Eckles v. Kansas City*, 257 S.W. 197 (Mo.App.1923) as holding that dis-

missal for cause calls for "personal misconduct." In that case the court did state (257 S.W. at 200): "Discharge for the 'good of the service' or 'for cause' imply [sic] some personal misconduct or fact, rendering the incumbent's further tenure harmful to the public interest."

Mr. Prenger first focuses on the statutory language in § 36.380 providing that an appointing authority may dismiss an employee *"when he considers* that such action is required in the interests of efficient administration and that the good of the service will be served thereby." (emphasis added.) He argues that the OA failed in its proof because it did not present evidence of the appointing authority's decision-making process prior to the termination of Mr. Prenger. He asserts that it is a necessary element in the OA's prima facie case that James R. Moody, Commissioner of the Office of Administration, or Stan Perovich, Director of the Division of General Services, considered and determined that Mr. Prenger's termination was required in the interests of efficient administration and was for the good of the service.

■ Mr. Prenger does not cite any authority, nor did the court discover any, for his proposition that proof of the decision-making process is an element of a prima facie case. The plain meaning of the statutory language, however, supports Mr. Prenger's argument that § 36.380 requires a decision by the agency that the conduct of the employee is of such a serious nature that dismissal is required rather than some other form of discipline. It is necessary then that there be evidence of the OA's conclusion that dismissal was required in the interests of efficient administration and that the good of the service will be served thereby. Mr. Prenger's letter of dismissal does not include such determinations by the OA; nor does the record of the hearing before the PAB include any testimony by the witnesses that such a determination was made.

■ If the only manner in which the statutory requirements could be met was

**2.** All statutory citations are to Revised Missouri Statutes 1986, unless otherwise stated.

by the OA, the proceedings against Mr. Prenger would be fatally defective. A contrary conclusion is compelled, however, by an examination of the legislative purpose in requiring administrative review of the OA's actions by the PAB before a disciplined employee is permitted to seek relief from the courts. The personnel advisory board is directed to promulgate rules and regulations to insure that no applicant or employee is discriminated against on the basis of race, creed, color, religion, national origin, sex, ancestry or handicap. Section 36.060. Such rules and regulations are technical. Appointing authorities may not possess the expertise necessary to effectuate such complex regulations. Under such circumstances it is to be expected that appointing authorities would fail to comply with all applicable regulations, forcing state employees to petition the courts for review in order to protect their rights. As this would be an undesirable situation, the legislature gave the PAB the additional responsibility of conducting hearings and rendering decisions on appeals from the actions of appointing authorities. Section 36.390. Upon appeal to the PAB by a dismissed employee pursuant to § 36.390.5, the PAB, exercising agency adjudicative power, ascertains the facts and applies existing law to such facts in order to resolve issues within the given area of agency expertise. *See J.C. Nichols Co. v. Director of Revenue*, 796 S.W.2d 16 (Mo. banc 1990).

■ The decision of an administrative tribunal, rendered on evidence heard, has been held by the Missouri Supreme Court to be the decision of the agency. *See J.C. Nichols Co.*, 796 S.W.2d at 20; *Geriatric Nursing v. Dept. of Social Services*, 693 S.W.2d 206, 209 (Mo.App.1985). Although these cases involve administrative tribunals other than the PAB, the role of the PAB in a review of a dismissal of an employee is analogous to the role of the Administrative Hearing Commission in *J.C. Nichols* and in *Geriatric Nursing*. Like the Administrative Hearing Commission, the PAB is a disinterested administrative tribunal charged with providing sound hearing procedures in administrative matters. *See Mo. Health Fac. v. Administrative Hearing Com'n*, 700 S.W.2d 445, 448 (Mo. banc 1985).

■ The PAB's role, on evidence heard, was to determine the administrative decision of the OA. *J.C. Nichols Co.*, 796 S.W.2d at 20. The decision of the PAB became the administrative action of the OA. *Id.* Mr. Prenger's due process rights are that he have notice and the right to be heard before being deprived on any significant property right. *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971). Compliance with the statutes and regulations occurred as a result of the proceedings before the PAB and Mr. Prenger's due process rights were not violated. He has no valid claim of error that the decision that his dismissal was required in the interest of efficient administration and was for the good of the service was made by the PAB and not by the OA.[3]

■ Mr. Prenger further argues that the PAB did not, in fact, find that his dismissal was required in the interests of efficient administration, and he cites *Mayfield v. Walsh*, 708 S.W.2d 201 (Mo.App.1986), for the proposition that the reviewing court may not assume the PAB found facts in accordance with the result reached. The written findings of fact of the PAB include a specific finding that Mr. Prenger's dismissal was for the good of the service, but do not specifically state that his dismissal was required in the interests of the efficient administration. Prior to Mr. Prenger's dismissal, however, the PAB promulgated 1 CSR 20–3.070(2) to govern the suspension, demotion and dismissal of employees such as Mr. Prenger. Although not purporting to enumerate every possible ground, 1 CSR 20–3.070(2) designates causes for suspension, demotion and dismissal of an employee. Inherent in such

---

**3.** There are situations imaginable where the actions of the OA in failing to comply with the statutes or its rules would prejudice the employee in a manner that such prejudice could not be alleviated by the PAB in its hearing. Such is not the case in the proceedings against Mr. Prenger.

regulation is the predetermination by the PAB that such conduct, when serious enough, requires termination in the interests of efficient administration.

Grounds established by 1 CSR 20–3.070(2)(B) are that the employee "is incompetent, inadequate, careless or inefficient in the performance of the duties of his/her position (specific instances to be charged) or has failed to meet established minimum standards in the performance of such duties." The PAB made a specific finding that Mr. Prenger was incompetent, inadequate, careless or inefficient in the performance of the duties of his position.[4] Such finding by the PAB is its conclusion that Mr. Prenger's incompetency, inadequacy, carelessness and inefficiency in the performance of his employment duties is contrary to the interests of efficient administration.

In 1 CSR 20–3.070(5) there is an additional requirement that the appointing authority determine that the good of the service will be served prior to the dismissal of an employee. Such finding is the threshold test for a determination that the conduct outlined in 1 CSR 20–3.070(2) is sufficiently serious to require dismissal, rather than suspension or demotion. By its findings that Mr. Prenger was incompetent, inadequate, careless or inefficient in the performance of the duties of his position and that his dismissal was for the good of the service, the PAB made all the findings required by § 36.390.

■ With regard to whether the PAB's affirmance of the dismissal was against the weight of the evidence, the PAB found that Mr. Prenger engaged in conduct contrary to the OA's policies, ignored the direction of his supervisors and created false documents. These facts are largely undisputed. It is the PAB's conclusion that these facts warranted Mr. Prenger's dismissal which is challenged by Mr. Prenger.

Mr. Prenger was a supervisor who, over a period of nine years, purchased in excess of two million dollars of materials from the revolving fund of the Division of General Services. Due to the nature of the revolving fund and his ability to make purchases without the approval of his own supervisor, he essentially acted independently in making such purchases. The need to obtain Mr. Kaiser's approval was the only difference in the bidding process for the purchase of the tools from the general revenue funds and the bidding process which Mr. Prenger utilized for his routine purchases from the revolving fund.

The evidence was not, as appellant contends, simply that Mr. Prenger was unaware of the prohibitions against breaking down a vendor's bid into groups to avoid the $2000 limit and that he innocently submitted three bids for each vendor, rather than one, to expedite the process. His conduct was much more culpable. By his conduct during the bidding process for the tool purchase, Mr. Prenger violated a trust relationship essential to the continued performance of his duties. He disobeyed his supervisors by failing to obtain approval from the Division of Purchasing before splitting the purchase orders and utilizing three bids from each vendor to avoid his $2000 purchasing limit. He then falsified the procurement documents by creating bid documents and making incorrect statements on the "Bid Records" to the effect that he had solicited and received separate written bids from the vendors for each of the three groups of tools. Upon presenting the falsified documents to his supervisor for approval, he made a false statement to his supervisor when he told him that he had obtained new bids from the vendors for each of the three categories of tools. Contrary to Mr. Prenger's assertion that all he did was obtain information for Mr. Kaiser to initiate the process for the purchase of tools for the OA garage, Mr. Prenger awarded the purchases to P & L Distributors, had the tools delivered to the OA garage and submitted the documentation to Mr. Kaiser for the purpose of obtaining payment to P & L Distributors. The findings of the PAB were supported by substantial and competent evidence that Mr. Prenger's dismissal was for the good of the service and that his conduct required his

4. The definitions of these terms are not at issue on appeal.

dismissal in the interests of efficient administration. Point I is denied.

■ In Point II, Mr. Prenger argues his dismissal was not "for good cause" because he claims there is not substantial and competent evidence that his behavior affected the administration of his office or affected the rights and interests of the public. Mr. Prenger, as a regular employee under the state merit system, could only be dismissed "for cause." *Chapman v. Board of Probation and Parole*, 813 S.W.2d 370, 371 (Mo.App.1991).

"For cause" means legal cause. It " 'must be one which specially relates to and affects the administration of the office, and must be restricted to something of a substantial nature directly affecting the rights and interests of the public.' " *McCallister v. Priest*, 422 S.W.2d 650, 657 (Mo. banc 1968) (citations omitted).

■ The performance of the responsibilities assigned to the manager of the vehicle maintenance garage requires trust and confidence that the person in the position will comply with the policies of the agency, obey the directives of his supervisors and be truthful. Additionally, the Division of Purchasing's procurement policies are designed to encourage competition among vendors, to provide a level playing field for all vendors, and to instill in vendors confidence in the integrity of the bidding process, and as a result, to provide the taxpayers with the best value for each dollar spent. In the instant case, the decision of the PAB to uphold the dismissal of Mr. Prenger was lawful and reasonable, and was based upon competent and substantial evidence. Mr. Prenger's conduct in failing to follow the directive of his supervisors and his submission of the false bid documents relates to and affects the administration of his office of manager of the OA garage. His further tenure as a supervisor with considerable authority and responsibilities could be harmful to the public interests. Mr. Prenger's breach of his duty was "of a substantial nature directly affecting the rights and interests of the public." Dismissal upon such conduct would, therefore, be "for cause."

■ Mr. Prenger argues that the letter of dismissal does not utilize the language of 1 CSR 20–3.070(2)(B) and, therefore, does not inform him that the basis of the disciplinary action is the claim that he is incompetent, inadequate, careless or inefficient. He suggests that the specific instances included in the dismissal letter might have fit within several of the other enumerated causes for discipline under the remaining subsections of 1 CSR 20–3.070(2). He cites *Razik v. United States*, 525 F.2d 1028, 1033–34, 208 Ct.Cl. 265 (1975), for the proposition that deviations between the charges of an agency to support the discipline and the grounds advanced by the hearing examiner to support the discipline are "not to be cavalierly tolerated and often flag a procedurally improper personnel action." *Razik* goes on to hold that if the hearing examiner dealt with each charge of misconduct specifically alleged, then the nature of the charges were not altered. *Id.* Such is the case in the matter of Mr. Prenger's dismissal. From the transcript it is clear that Mr. Prenger knew the specifics of the misconduct charged by the OA and considered by the PAB. Both prior to his termination and at the PAB hearing, he addressed such misconduct and there was no indication that he was hampered in the presentation of his defense by any misunderstanding of the charges he was facing. The hearing record also demonstrates that the PAB limited itself to the instances of misconduct alleged by the OA. Point II is denied.

In his Point III, Mr. Prenger claims the PAB erred when it found that the appointing authority for the Office of Administration complied with all mandatory procedural and due process requirements in dismissing him. He claims that his procedural due process rights were violated in that the letter of dismissal was fatally defective because the bid documents referred to in the letter were not attached to it and incorporated into it by reference.

■ Mr. Prenger, as a regular employee under the state merit system, possessed a liberty or property interest in his

employment. *Chapman*, 813 S.W.2d at 371. This liberty or property interest entitled him to procedural due process. *Id.* One essential element of procedural due process is notice. *Id.* Missouri law requires that before the dismissal of such an employee, the state agency employer must provide the employee with a written statement setting forth the reason for the dismissal. Section 36.380. "The purpose of the notice required by this section is to sufficiently inform an employee of the reason for discharge to enable him to attempt to prepare a defense to that reason." *McClellon v. Gage*, 770 S.W.2d 466, 468 (Mo.App.1989).

The Office of Administration Personnel Division's Manual of Personnel Procedures for Appointing Authorities (Manual) sets out the policies and procedures established by the OA for the administration of the provisions of Chapter 36 RSMo, the State Personnel Law, and the Rules and Regulations of the Personnel Advisory Board. Manual, § A–1, pg. 1. The Manual requires that copies of documents (if any) which contain further details relating to the causes for dismissal must be referenced and attached to the letter of dismissal. *Id.* at § H–3, pp. 4–5. Although Mr. Prenger's letter of dismissal referred to bid documents, it did not have copies of the bid documents attached or incorporated by reference. Mr. Prenger claims that the failure of the OA to comply with this requirement makes his dismissal invalid.

An agency is compelled to comply with its rules duly promulgated pursuant to properly delegated authority, as such rules have the force and effect of law and are binding upon the agency adopting them. *Missouri Nat. Educ. v. Missouri State Bd.*, 695 S.W.2d 894, 897 (Mo. banc 1985). To obtain a ruling that the dismissal process is invalid for the OA's failure to comply with its rules, Mr. Prenger must prove that the attachment of copies of the bid documents was mandated by the OA's policies and procedures. He must also prove he was prejudiced by the OA's failure to attach such copies. *Id.; Kabir v. Dept. of Social Services*, 782 S.W.2d 706,

709 (Mo.App.1989). Since the question whether Mr. Prenger was prejudiced is dispositive and easily dealt with, the court elects to address such issue rather than determine whether Mr. Prenger raised his procedural due process question at the first available opportunity or whether a bid document is the type of document The Manual requires to be attached to the letter of dismissal.

Mr. Prenger argues he was prejudiced because he did not have copies of the bid documents when he had the pretermination opportunity to rebut the charges against him or when he was preparing his appeal to the PAB. He does not indicate any disadvantage he suffered, however, or what strategy of his defense would have changed if he had been in possession of copies of the bid documents. In fact, he does not contend that he was unfamiliar with the bid documents or unaware of the contents of the documents. Mr. Prenger's conclusion that he was prejudiced, without the statement of a factual basis to support such conclusion, is insufficient to prove prejudice requiring reversal. Point III is denied.

The judgment is affirmed.

All concur.