**Steven Keith STACY, Petitioner–Appellant,**

v.

**Tony HARRIS, Respondent–Respondent.**

**No. SD 29845.**

Missouri Court of Appeals,
Southern District,
Division One.

July 29, 2010.

Motion for Rehearing and Transfer Denied Aug. 20, 2010.

Application for Transfer Denied Sept. 21, 2010.

John M. Albright, Poplar Bluff, MO, for Appellant.

Chris Koster, Attorney General and Michael R. Cherba, Assistant Attorney General, Jefferson City, MO, for Respondent.

DON E. BURRELL, Judge.

Steven K. Stacy ("Employee") appeals from a judgment of the circuit court affirming a decision of the Personnel Advisory Board ("the PAB") affirming Employee's dismissal from his merit system position with the Missouri Department of Mental Health ("Employer"). In three points relied on, Employee alleges he did not receive adequate notice of the grounds on which his termination was based; that the PAB erred in concluding it could sanction his dismissal pursuant to 1 C.S.R. 20–3.070(2)(B) instead of pursuant to Missouri Department of Mental Health Operating Regulation 2.205 ("DOR 2.205"); and that the PAB improperly substituted its judgment of the appropriate sanction for that of Employer.[1] Because the PAB's decision was supported by substantial evidence, did not misapply the law, and did not constitute an abuse of discretion, we affirm the judgment.

### Factual and Procedural Background

Employee worked from 1994 to 2006 as an "Associate Psychologist II" at Employer's Southeast Missouri Residential

---

1. Employee further alleges the PAB erred as a matter of law by failing to uniformly enforce employment regulations and in finding that Employee had committed an instance of class II neglect. As to each of these complaints, as well as his claim that the PAB improperly substituted its judgment for that of Employer on the appropriate sanction to be imposed, Employee either misstates or misinterprets the PAB's actual findings and conclusions. Specifically, Employee's dismissal was not upheld on the ground that Employer had proved a single incident of class II neglect where proof of two such incidents was re-

quired for an automatic dismissal under DOR 2.205. Rather, the PAB affirmed the dismissal pursuant to 1 C.S.R. 20–3.070(2)(B), an alternative ground also asserted by Employer. This alternative ground alleged that Employee was "incompetent, inadequate, careless or inefficient in the performance of [his] duties as an Associate Psychologist II." The "incompetent, inadequate, careless or inefficient" language is a direct quotation from 1 C.S.R. 20–3.070(2)(B). In light of the PAB's actual ruling, issues related to what conduct constitutes class II neglect are irrelevant to our review and we do not address them.

Services ("SEMORS") housing facility. Employee's position was a merit system position, and was thereby subject to the state merit system law (chapter 36, RSMo[2]) and ancillary administrative rules promulgated and administered by the State Division of Personnel and the PAB. As an Associate Psychologist II, Employee's responsibilities included, among other things, writing a behavior support plan ("BSP") for each patient. Patients at SEMORS were also variously referred to by Employer as "consumers," "clients," or "residents." Employee was also responsible for training the direct care staff at SEMORS on all aspects of each resident's BSP before it was implemented. Employee's training of the direct care staff was a key job component of his position and was necessary to protect both residents and staff from harm.

The Appointing Authority for SEMORS was Tony Harris ("Respondent"), the facility's superintendent. Respondent placed Employee on administrative leave while he investigated an incident in which Employee was alleged to have failed to include a note in a BSP dated September 1, 2005, regarding the necessity of protective equipment for a particular client, A.B., who had demonstrated self-injurious behavior. After conducting his investigation, Respondent sent Employee a letter dated December 6, 2006, which outlined Respondent's findings and made a "preliminary determination [against Employee] of one count of [c]lass II [n]eglect." The letter also notified Employee that the disciplinary action being taken against him in regard to the incident involving A.B. was governed by two separate sets of rules. The first was "a disciplinary action governed by the rules of the [PAB]" and the second was "an abuse and/or neglect find-

ing governed by [DOR 2.205]." The letter stated that Employee had been "incompetent, inadequate, careless or inefficient in the performance of [his] duties as an Associate Psychologist II." The letter also informed Employee that he would remain on administrative leave until December 22, 2006, at which time he would serve a one-day suspension without pay.

On December 22, 2006, Respondent sent Employee a second letter. This second letter notified Employee that his employment at SEMORS was being terminated effective January 5, 2007. The second letter (as had the first) began with the following notice in bold type:

**Please note: This letter contains within it two separate actions. First, there is a disciplinary action governed by the rules of the Missouri Personnel Advisory Board. Second, there is an abuse and/or neglect finding governed by Missouri Department of Mental Health Operating Regulation 2.205.**

The second letter went on to inform Employee that his failure to properly train employees had resulted in a second incident at SEMORS. The letter also informed Employee that he had the right to present additional facts to Respondent and had the right to appeal his dismissal to the PAB in accordance with 1 C.S.R. 20–3.070(5) and 1 C.S.R. 20–4.010(1) (rules promulgated by the PAB).

The second letter's reference to a "second incident" concerned L.M., a SEMORS client who had a medical condition that required her to remain upright for at least thirty minutes after eating. Employee had created a BSP for L.M. that directed direct care staff to use specific restraint techniques on L.M. when she began exhibiting extreme behaviors. The BSP direct-

2. All references to chapter 36 are to RSMo 2000. All references to chapter 536 are to RSMo, Cum.Supp.2006.

ed that "least restrictive methods" were to first be used to attempt to de-escalate L.M.'s behavior. If such methods did not abate the emergency, the direct care staff was then directed by the BSP to place her in "an agency approved emergency restraint until the emergency no longer exists." The BSP also noted that "the two person restraint with or without assistance procedures may be utilized to manage the emergency situation if [L.M.] has already fallen or slipped to the floor upon her own accord." Finally, the BSP stated, "If [L.M.] has to be restrained within 30 minutes after eating she MUST be restrained in the standing position." (Emphasis in original). Employee was responsible for training staff on L.M.'s BSP.

On October 11, 2006, "developmental assistants" (personnel considered to fall within the category of direct care staff) Karen Cooper, Grace Wagner, and Martha McClure worked the 7:00 a.m. to 3:00 p.m. shift in the SEMORS home where L.M. resided. While Wagner and Cooper were in L.M.'s bedroom, L.M. became aggressive and attacked them. Wagner and Cooper placed L.M. in a standing restraint and called McClure to come assist them. When McClure arrived, L.M. was still struggling. All three staff members and L.M. slipped on L.M.'s comforter and fell to the floor. McClure restrained L.M.'s legs while Cooper and Wagner restrained L.M.'s upper body. Cooper and Wagner attempted to lift L.M.'s chest off the floor. L.M. became calm in less than five minutes and was released from the restraint.

SEMORS's policy at the time of the incident made allowance for only a two-person floor restraint unless a different type of restraint technique was outlined in the resident's BSP and staff was trained on the technique.

An investigation of the incident took place when L.M. subsequently alleged that the staff had abused her. McClure testi-

fied that she had never been trained on L.M.'s BSP during the three years she had worked with L.M. at SEMORS. McClure testified that she was unaware of any special requirements for any restraint techniques used on L.M. Wagner testified that she had not read L.M.'s BSP and had not received any training on it in the three months she had worked with L.M. Training records also indicated that Cooper, the third direct care staff member involved in the incident, also had not received any training on L.M.'s BSP.

On January 5, 2007, Respondent held a "due process meeting" with Employee, who asked a couple of questions and requested copies of reports Respondent had received but did not present Respondent with any additional information about the incidents. In a third letter, dated April 27, 2007, Respondent informed Employee that his dismissal from employment would not be reversed but would have a new effective date of April 30, 2007. The third letter stated that Respondent's reason for terminating Employee was Respondent's substantiation of the incidents referred to in his first and second letters. It was Respondent's contention that each of the incidents they referred to constituted instances of class II neglect as defined by DOR 2.205 and that this regulation required the termination of any employee who had engaged in two incidents of substantiated class II neglect within a 12–month period.

On May 3, 2007, Employee appealed his termination to the PAB. After holding an evidentiary hearing, the PAB affirmed Employee's termination in its written "Findings of Fact, Conclusions of Law, Decision and Order" dated June 10, 2008. In its decision and order, the PAB first found that the incident involving A.B. referred to in Respondent's first letter to Employee did not meet the necessary cri-

teria to rise to the level of class II neglect.[3] The PAB did find, however, that the incident involving L.M. referred to in Respondent's second letter did constitute class II neglect. The PAB found that "[Employee] failed to train the direct care staff on client LM's [BSP] over a course of at least three years" and that this failure to train resulted in the direct care staff acting contrary to the plan's requirements and "placing L.M. in a prone restraint within thirty minutes of her eating on October 11, 2006."

The PAB also noted that even if the incident involving L.M. did not occur within 30 minutes of L.M. eating and L.M. suffered no injury, Employee still failed to train the staff as required. And while the PAB found that the incident with L.M. did constitute an incident of class II neglect, because it had also determined that the incident involving A.B. did not fit within that category, the PAB disagreed with Respondent's contention that Employee's termination was mandatory under DOR 2.205. Instead, the PAB found that Employee's failure to train direct care staff on L.M.'s BSP "qualif[ied] as a cause for dismissal pursuant to Board Regulation 1 C.S.R. 20–3.070(2)(B)" and affirmed Employee's termination on that basis.

### Analysis

#### Standard of Review

The standard for judicial review of a decision of the PAB is set forth in section 536.140. "The inquiry may extend to a determination of whether the action of the agency (1) is in violation of constitutional provisions; (2) is in excess of the statutory authority or jurisdiction of the agency; (3) is unsupported by competent and substantial evidence upon the whole record; (4) is, for any reason, unauthorized by law; (5) is made upon unlawful procedure or without a fair trial; (6) is arbitrary, capricious or unreasonable; (7) involves an abuse of discretion." Section 536.140.2.

■■■■ "The decision of the PAB is reviewed as if it had been directly appealed to this court." *Prenger v. Moody*, 845 S.W.2d 68, 73 (Mo.App. W.D.1992) (citation omitted). "If the Board's ruling 'is supported by competent and substantial evidence upon the whole record ... the ruling will be affirmed, even though the evidence would also have supported a contrary determination.'" *Missouri Veterans' Comm'n v. Vanderhook*, 290 S.W.3d 115, 119–20 (Mo.App. W.D.2009) (quoting *Lagud v. Kansas City Bd. of Police Comm'rs*, 136 S.W.3d 786, 791 n. 5 (Mo. banc 2004)). "'This Court must look to the whole record in reviewing the Board's decision, not merely at that evidence that supports its decision,' and we no longer view the evidence in the light most favorable to the agency's decision." *Vanderhook*, 290 S.W.3d at 119 (quoting *Lagud*, 136 S.W.3d at 791).

■■■■ "A reviewing court will refrain from substituting its judgment for that of the [PAB] on factual matters." *State Bd. of Registration for the Healing Arts v. McDonagh*, 123 S.W.3d 146, 152 (Mo. banc 2003). "We may not substitute our judgment on the evidence for that of the agen-

---

**3.** If we understand Employee correctly, this ruling was the basis for his argument that the appropriate disciplinary action against him should have been a one-day suspension—the discipline Employer had imposed when it believed Employee had committed one act of class II neglect. In support of his claim that the PAB improperly substituted its judgment of the appropriate sanction for that of Em-

ployer, Employee has failed to point to any evidence indicating that Employer would only have imposed a one-day suspension after the incident with L.M. if Employer knew that the prior incident with A.B. would fail to qualify as an incident of class II neglect. The fact that Employer has filed a brief in opposition to each of Employee's claims of error would support the opposite conclusion.

cy, and we must defer to the agency's determinations on the weight of the evidence and the credibility of witnesses." *Orion Sec., Inc. v. Board of Police Comm'rs of Kansas City,* 90 S.W.3d 157, 163 (Mo.App. W.D.2002). "While this Court cannot substitute its own judgment on factual matters, it can independently determine questions of law." *Id.*

### Adequate Notice Requirement

■■ Section 36.380 governs the dismissal of state merit system employees. *Department of Soc. Servs. v. Oliver,* 261 S.W.3d 719 (Mo.App. W.D.2008).[4] "For an employee's dismissal to take effect, Section 36.380 requires the appointing authority to give the employee a written reason for the dismissal before the dismissal's effective date." *Id.* "Any employee being suspended shall be furnished with a statement in writing *specifically setting forth the reasons for the suspension.*" *Division of Family Servs. v. Cade,* 939 S.W.2d 546, 551–52 (Mo.App. W.D.1997) (emphasis in original) (holding an employee was given insufficient notice when he was not furnished with specific reasons for his twenty-day, retroactive suspension without pay). "Rules and regulations, if duly promulgated, have the force and effect of law."[5] *Id.* at 551. "At the most fundamental level, due process requires that a person facing the deprivation of a property interest must receive notice and an opportunity for a hearing 'appropriate to the nature of the case.'" *Id.* at 553 (quoting *Moore v. Bd. of Educ. of Fulton Pub. Sch. No. 58,* 836 S.W.2d 943, 947 (Mo. banc 1992), and *Belton v. Bd. of Police Comm'rs of Kansas City,* 708 S.W.2d 131, 137 (Mo. banc 1986)) (citations omitted).

■ Employee argues he was not afforded proper "notice of the grounds on which termination [was] sought[.]" Whether the notice provided was sufficient to satisfy the requirements of due process is assessed by using the balancing test set forth in the United States Supreme Court case of *Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). *Cade,* 939 S.W.2d at 553. "The *Mathews* test balances three interests: (1) the private interest affected by the action; (2) the risk of an erroneous deprivation of that interest under the procedures being used; and (3) the government's interest in resolving the matter without being unduly burdened by additional or substitute procedural requirements." *Id.*

■ First, we find that as a merit employee, Employee had a property interest in his job. *Id.* at 552 n. 7. Employee's loss of that job constituted a complete deprivation of his property interest. *See McCall v. Goldbaum,* 863 S.W.2d 640, 642 (Mo. App. E.D.1993). Thus, Employee had a due process right to receive adequate notice of the reasons for his dismissal prior to its effective date. *Cade,* 939 S.W.2d at 552.

■ In considering the second factor, we find that there was not a substantial risk of an erroneous deprivation of Employee's interest by Respondent giving Employee notice as set forth in his first and second letters to Employee. This case is completely distinguishable from the notice given in *Cade,* in which the employee was merely informed that he was "being suspended pending further investigation of charges of alleged sexual harassment of fellow employees by your actions [ . . . ]."

---

**4.** *Overruled on other grounds by Missouri Veterans' Comm'n v. Vanderhook,* 290 S.W.3d 115, 120 n. 3 (Mo.App. W.D.2009) (noting that administrative decisions should no longer be reviewed in the light most favorable to the agency).

**5.** Employee has not challenged the agency's promulgation of 1 C.S.R. 20–3.070(2)(B).

939 S.W.2d at 554. In *Cade*, The employee was not given any hint as to which employees he had allegedly harassed, what his actions were that constituted harassment, and, as a result, had a limited ability to prepare a defense. *Id.*

In another case finding a lack of adequate notice, *Brixey v. Personnel Advisory Bd.*, 607 S.W.2d 825 (Mo.App. S.D. 1980), the challenged notice came in the form of two letters and a service report. *Id.* at 827. As in *Cade*, it was conceded that "the [PAB] 'found reasons not included in the dismissal notice.' This shows that [the employee] did not receive a proper written notice and thus may not have had an adequate opportunity to rebut those grounds. There is no way for us to determine if the board would have upheld the dismissal if those grounds had not been considered." *Id.* at 828 (quoting what we presume was the employer's brief).

In contrast to *Cade* and *Brixey*, the employee in *Hattervig v. de la Torre*, 870 S.W.2d 895 (Mo.App. W.D.1993), alleged he had not been afforded proper notice when he was accused of exhibiting disruptive behavior toward several employees because only one of those employees had been named in his letter of dismissal. *Id.* at 898. The appellate court found that the employee was given proper notice because his dismissal was upheld "for the same infraction alleged in [the hiring authority]'s [dismissal] letter" and "was apprised of and had a meaningful opportunity to prepare a defense to the charge of which he was found guilty by the Board and which is the subject of our review in this appeal[.]" *Id.* (italics omitted).[6]

In the instant case, the first and second letters Respondent sent Employee gave very specific details of the incidents that would be the subject of Respondent's investigations and appropriately alleged Employee's involvement in the matters they referenced. The letters also stated the legal grounds for the contemplated disciplinary actions. The second letter specifically stated that Employee had "been incompetent, inadequate, careless or inefficient in the performance" of duties, that Employee's failure to train staff on a BSP warranted dismissal, and referred Employee to his "right to appeal [his] dismissal to the [PAB] in accordance with 1 CSR 20–3.070[ . . . ]." The second letter told Employee that he could present information explaining why the dismissal should not be effective *and* that he could present information explaining why a finding of class II neglect was incorrect. Because Employee was provided with notice of the exact nature of the complaints against him, as well as the rules and regulations that would govern the disposition

---

6. Although Employee relies heavily on *McCall v. Goldbaum*, 863 S.W.2d 640, 642 (Mo.App. E.D.1993), it is also distinguishable from the case at bar because McCall was terminated for reasons not set forth in the notice he had been given. The notice sent to McCall said that he was being terminated for class II neglect, sexual abuse of clients, and consumption of alcohol on the job. *Id.* at 641. In reviewing McCall's termination, the PAB "concluded [McCall] was 'guilty of abusive or improper treatment toward residents of St. Charles Habilitation Center' but he 'did not consume alcohol on the premises.' The [PAB] made no findings as to whether [McCall] was guilty of either [c]lass II neglect or sexual abuse of clients." *Id.* The circuit court was held to have correctly reversed the PAB because McCall was in essence found guilty of something—"client abuse and neglect"—that he had not been charged with and did not enable [him] to prepare a defense to "abusive or improper treatment toward residents." *Id.* at 642. In the instant case, Employee's notice alleged he had "been incompetent, inadequate, careless or inefficient in the performance" of his duties in failing to train the direct care staff on L.M.'s BSP and the PAB approved his termination on that ground.

of them, Employee had adequate notice of the grounds for his termination.

■ In regard to the third *Mathews* factor, there is no basis to require additional or different notice procedures by the government. We find that any additional or more detailed notice would not have helped Employee's cause, as he was already informed of the details of the charges against him. Employee's claim that he was not afforded adequate notice of the charges against him is without merit. Point denied.

### Dismissal based on 1 C.S.R. 20–3.070(2)(B)

1 C.S.R. 20–3.070 (entitled "Separation, Suspension and Demotion") grants a merit system employee the right to appeal any termination of employment and also contains several alternate grounds for the dismissal of such employees. In regard to grounds applicable to the case at bar, the rule states:

> (2) Causes for Suspension, Demotion and Dismissal. The following are declared to be causes for suspension, demotion or dismissal of any employee in the classified service,[7] depending upon the seriousness of the cause; however, those actions may be based upon causes other than those enumerated in this rule, namely, that the employee:
>
> . . . .
>
> (B) Is incompetent, inadequate, careless or inefficient in the performance of the duties of his/her position (specific instances to be charged) or has failed to meet established minimum

standards in the performance of those duties[.]

1 C.S.R. 20–3.070(2)(B). This PAB rule was applicable to Employee during his employment as a merit system employee and Employee was notified that the violation of PAB rules would be one of the two alternative grounds Employer would rely on in terminating his employment.[8]

■ "The Personnel Advisory Board exists by authority of section 36.050," which "gives the Board authority not inconsistent with the chapter to make rules and regulations." *Kyle v. State Pers. Advisory Bd.*, 607 S.W.2d 848, 849 (Mo.App. W.D.1980). "Under this authority the Board adopted Rule 1 CSR 20–3.070[.]" *Id.* It is within the authority of the PAB to interpret and construe the rules of the Department of Mental Health to determine if Employee's dismissal was justified in light of the situation. *Id.*

■ A dismissal may be affirmed by the PAB when the employee at issue is found to be "incompetent, inadequate, careless, or inefficient in the performance of the duties of his position and [the] . . . dismissal [is] for the good of the service . . . ." *Prenger*, 845 S.W.2d at 75. In *Prenger*, the appellate court found it appropriate for the PAB to affirm an employee's dismissal for being "incompetent, inadequate, careless or inefficient in the performance of the duties of his position and that his dismissal was for the good of the service" when the employee had engaged in conduct contrary to his employ-

---

7. "Associate Psychologist II" is a classified position. (Missouri Office of Administration, Division of Personnel, *Alphabetical Listing of Classes* 9 (2010)).

8. Employee's brief focuses on DOR 2.205(10)(c)(1), a regulation that mandates the dismissal of a merit system employee who has accumulated two substantiated class II

neglect violations within a twelve-month period—apparently the primary ground Respondent said he was relying on in terminating Employee. Because the PAB found that the incident with A.B. did not meet the definition of class II neglect, this mandatory termination rule did not apply to Employee and was not relied on by the PAB in its affirmation of Employee's dismissal.

er's policies, "ignored the direction of his supervisors," and falsified documents. *Id.* at 76

Employee relies extensively on *Missouri Dept. of Soc. Servs. v. Young,* 700 S.W.2d 889, 891 (Mo.App. W.D.1985), in which an employee was demoted for his failure to disclose the fact that he was married to a subordinate employee. *Id. Young* did not involve any violation of a job-related law or policy that was in place or even communicated to the employee. *Id.* In the instant case, Employee was charged with violating both PAB rules and a Department of Mental Health regulation in the performance of his duties as an Associate Psychologist II.

The PAB found adequate cause to dismiss Employee existed under 1 C.S.R. 20–3.070(2)(B) as his failure to train over a three-year period the direct care employees identified in Respondent's letters resulted in L.M. and those employees being placed in a potentially dangerous situation. There was sufficient evidence before the PAB (in the form of live testimony, affidavits, investigative reports, and employee personnel files) that Employee was aware of his duty to train direct care staff on patient BSPs and did, in fact, fail to perform that duty in violation of 1 C.S.R. 20–3.070(2)(B).

A failure to properly train direct care staff on clients' BSPs can result in serious harm either to the clients or the employees providing direct care to those clients. A failure to properly train employees can also subject an employer to causes of action for negligence. *See, e.g., Boyer v. Empiregas, Inc. of Chillicothe,* 734 S.W.2d 828, 832 (Mo.App. W.D.1987). Employee's repeated and protracted failures to appropriately train direct care staff, when it was his duty to do so, put clients, fellow employees, and Employer at risk.

Employee has also not challenged the PAB's finding that Employee's discharge

was "for the good of the service." Discharge "for the good of the service" based on 1 C.S.R. 20–3.070(2)(B) implies "some personal misconduct or fact, rendering the incumbent's further tenure harmful to the public interest." *Kyle,* 607 S.W.2d at 850 (quoting *State ex rel. Eckles v. Kansas City,* 257 S.W. 197, 200 (Mo.App.K.C.D. 1923)). Because Employee's failure to properly train direct care staff was a sufficient danger to the public interest, as in *Prenger* and *McCalister,* the PAB did not abuse its discretion in finding that Employee's termination was for the good of the service.

Employee has failed to carry his heavy burden of overcoming the presumption that the agency's factual determinations were correct. *See Vanderhook,* 290 S.W.3d at 120. In addition, the PAB's decision affirming the termination of Employee on the grounds that Employee's failure to train employees on L.M.'s BSP was "incompetent, inadequate, careless, and inefficient performance of his job duties" and that his dismissal was for the good of the service was supported by substantial evidence, and did not misapply the law.

Employee's second and third points are also denied, and the judgment of the trial court upholding the decision of the PAB is affirmed.

BARNEY, J., and BATES, P.J., Concur.