**DIVISION OF FAMILY SERVICES,**
**Appellant,**

v.

**Bennie CADE, Respondent.**

**No. WD 52347.**

Missouri Court of Appeals,
Western District.

Feb. 25, 1997.

Shelley Thomas–Benke, Mo. Dept. of Social Services, Jefferson City, for appellant.

Maureen McCarthy Franz, Franz & Franz, P.C., St. Louis, for respondent.

Before BRECKENRIDGE, P.J., and HANNA and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

Bennie Cade, an employee of the Missouri Department of Social Services, Division of Family Services (DFS), received notice in August 1993 that he would be suspended without pay for 20 days while DFS investigated charges of sexual harassment made against him. Mr. Cade appealed his suspension to the Missouri Personnel Advisory Board (PAB), alleging DFS did not give him adequate due process notice of the basis for the suspension. On September 28, 1993, before the PAB had considered Mr. Cade's appeal and the day following the conclusion of the suspension, Mr. Cade was given notice by DFS that it had concluded its investigation and determined that some of the charges against him were substantiated. The notice also informed Mr. Cade that he was given a twenty-day disciplinary suspension, but that the suspension would be retroactively concurrent with the suspension he had just completed serving. A few weeks later, Mr. Cade requested and was granted transfer to a different, lower paying job in DFS.

More than a year later the PAB heard Mr. Cade's appeal. Following a hearing it determined that Mr. Cade had not received adequate notice of his August 1993 suspension. It further considered the merits of the charges against him and determined that DFS had not shown by competent and substantial evidence that Mr. Cade had engaged in sexual harassment. It ordered Mr. Cade to receive back pay for the period of his suspensions. It further found that his voluntary transfer should be treated as an involuntary demotion and ordered him reinstated to the position he had held before his transfer, with back pay. DFS appeals.

We affirm the PAB's finding that Mr. Cade received inadequate pre-suspension notice of his August 1993 suspension. We also find that he received no pre-suspension notice of his September 1993 suspension, as it was ordered to run retroactively. Because of these rulings, we affirm the portion of the PAB's order finding the suspensions were invalid and ordering Mr. Cade to receive back pay for the period of the suspensions. We do so without reaching the merits of the claims of sexual harassment against Mr. Cade. We reverse so much of the PAB's order as finds that Mr. Cade's transfer should be treated as an involuntary demotion and that he was therefore entitled to reinstatement.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mr. Cade has been employed by the Missouri Department of Social Services, Division of Family Services (DFS), since 1980. Beginning on approximately July 26, 1993, Mr. Cade was put on paid administrative leave pending investigation of allegations of sexual harassment made by several fellow employees. On August 27, 1993, he received a letter from DFS which notified him that effective September 1, 1993, he would be suspended without pay for twenty days while DFS investigated the allegations against him. The letter stated:

> You are hereby notified of your suspension without pay for twenty (20) working days from the Division of Family Services (DFS) subject to your right to show reasons why this suspension should not be effected. You may answer in person ... before August 31, 1993, or you may present your case in writing ...
>
> *You are being suspended pending further investigation of charges of alleged sexual harassment of fellow employees by your actions which are perceived by them as creating a hostile work environment that is not conducive to their being able to successfully perform their work requirements.*

If you consider your suspension improper you are advised that you have the right to appeal under 1 CSR 20–3.070(3)....
(emphasis added).

The suspension was ordered to run the twenty working days from September 1, 1993 through September 27, 1993. During the period of this suspension, Mr. Cade informally appealed the suspension to the PAB. On September 28, 1993, before the PAB heard his appeal, Mr. Cade received a second letter from DFS notifying him that DFS had completed its investigation of the allegations against him. The letter stated that in its investigation DFS had substantiated allegations that Mr. Cade sexually harassed co-workers by: (1) touching them; (2) making inappropriate and unwelcome remarks about their clothing, hair, and figures; (3) putting his foot up on chairs or desks and touching his genital/crotch area while speaking with them; and (4) having a conversation about sex and incest with a coworker without a work-related reason to discuss the topic.

DFS's letter further noted that Mr. Cade had admitted to its investigators that he had hugged co-workers (side-to-side), commented on their clothing and hair, placed his foot on desks and chairs, and picked up a co-worker and carried her part of the way across a street to avoid a snowdrift, without her permission. DFS letter also stated that during its investigation it found that Mr. Cade violated agency policy by excessively reimbursing a benefits recipient. The letter concluded that a twenty-day suspension without pay was merited. Because Mr. Cade had just served a twenty-day suspension without pay, the letter said, DFS considered this to be sufficient punishment. DFS declined to take further disciplinary action.

A few weeks after receiving this letter, Mr. Cade requested a transfer to another job because he said the atmosphere in his office had become uncomfortable as a result of the allegations against him. He was aware that the job he requested to be transferred to was a demotion. The transfer was granted.

In late 1994 and early 1995, the PAB held hearings both on Mr. Cade's appeal of his twenty day "investigatory" suspension pursuant to the August 27, 1993, letter and on the merits of the September 28, 1993, disciplinary suspension for sexual harassment.[1] The PAB issued its decision in May 1995, concluding that Mr. Cade gave both male and female co-workers what it styled as "compliments, friendly consolation, and assistance" at nearly every opportunity. These included hugging co-workers side-to-side, touching their shoulders, arms, and back, and repeatedly complimenting or commenting on their clothes. Mr. Cade would stop his comments about a particular person if she complained, and would apologize, but would continue to make similar comments about other women. He also admitted he had a "bad habit" of putting his leg up on a chair and of "hitching up" his pants when he did so by pulling them up at the crotch area. It concluded, however, that there was no evidence that Mr. Cade's conduct was motivated by a sexual purpose, that intra-office politics may have played a role in some of the allegations, and that his conduct thus did not constitute sexual harassment. It therefore found that his suspension was not for good cause and not for the good of the service.

The PAB further found that Mr. Cade had been denied due process in the suspension

1. Mr. Cade did not separately appeal his September 28, 1993, retroactive disciplinary suspension. DFS did not object to consideration of the merits of that suspension at the hearing before the PAB, however. Quite to the contrary, at the hearing, both parties agreed that the PAB should reach the merits of the suspension and offered evidence on the merits. Now, on appeal, DFS argues that because of the lack of a separate appeal of the September 28, 1993, order, we should not consider the merits of the suspension. We disagree. Under Sections 536.063.3 and 36.390.5 this issue was tried by consent and is thus properly before us.

For similar reasons, we reach Mr. Cade's claim on appeal that he received inadequate notice of his August 1993 suspension, despite the fact that at the hearing he told the hearing officer he would waive that issue so that the hearing officer could reach the merits of the allegations of harassment. We find that the issue of the adequacy of the notice Mr. Cade received is nonetheless properly before us by consent of the parties under Sections 536.063.3 and 36.390.5 because evidence as to it was adduced, the hearing officer and the PAB ruled on the issue, and both parties have briefed this issue in detail in this Court.

process because DFS did not give Mr. Cade an adequate pre-suspension opportunity to contest the allegations against him by failing to inform him in the letter of suspension of the factual basis for the allegations. More specifically, the PAB's ruling stated:

> The letter of suspension ... failed to give [Mr. Cade] an opportunity prior to the suspension to show reasons why such suspension should not be effected. The letter of suspension did not inform [him] about the events or acts that demonstrated the conduct that supported the charges against him. The failure of the letter to so inform [him] prevented him from preparing a response that would show reasons why such suspension should not be effected. The failure of the letter to so inform [him], along with the Appointing Authority's [DFS's] orders to [him] that obstructed [his] efforts to otherwise inform himself, also hindered and obstructed his preparation of an informed appeal from the twenty day suspension during the thirty day appeal period that followed the effective date of the twenty day suspension.

As a remedy, the PAB ordered Mr. Cade to receive the wages lost during the suspension. It further found that Mr. Cade's request for a transfer really constituted an involuntary demotion since it arose out of the alleged sexual harassment. It therefore ordered Mr. Cade be reinstated to the position from which he had requested a transfer, and the payment of back wages he would have earned had he remained in that position.

DFS appealed the PAB's decision to the circuit court, which affirmed. DFS now appeals to this Court, alleging that: (1) it satisfied the requirements of due process by notifying Mr. Cade on August 27, 1993, that he was being suspended because of allegations of sexual harassment by co-workers and by telling him how he could appeal the suspension; (2) the PAB did not have the power to order Mr. Cade's reinstatement to his prior position; and (3) the PAB erred in finding that Mr. Cade's conduct did not constitute sexual harassment.

**2.** All statutory citations are to Missouri Revised Statutes 1986, as supplemented in 1993, unless

## II. STANDARD OF REVIEW

On appeal, we review the decision of the PAB, not the decision of the circuit court. *McCall v. Goldbaum*, 863 S.W.2d 640, 642 (Mo.App.1993); *Prenger v. Moody*, 845 S.W.2d 68, 75 (Mo.App.1992). We generally give great deference to the decisions of administrative agencies such as the PAB on questions of fact, and do not substitute our judgment for that of the agency unless its action exceeds its authority; is not based on substantial and competent evidence on the record as a whole; is unreasonable, arbitrary or capricious; involves an abuse of discretion; or is otherwise unlawful. § 536.140, RSMo 1986;[2] *Hattervig v. de la Torre*, 870 S.W.2d 895, 897 (Mo.App.1993); *Prenger*, 845 S.W.2d at 73. We are not bound by the PAB's decision on questions of law. *McCall*, 863 S.W.2d at 642.

## III. DFS VIOLATED MR. CADE'S DUE PROCESS RIGHTS IN FAILING TO ADEQUATELY NOTIFY HIM OF THE ALLEGATIONS AGAINST HIM

The first issue before us is whether DFS's August 27, 1993, letter notifying Mr. Cade of his twenty-day suspension pending investigation of the allegations against him failed to fulfill the requirements of due process because it did not adequately inform Mr. Cade of the events or acts supporting the allegations against him, thereby preventing him from contesting the suspension or making an informed appeal of the suspension. DFS argues that it satisfied the requirements of due process in its letter of suspension by informing Mr. Cade of the fact that he was being suspended pending an investigation of sexual harassment charges, by stating that he could respond to the suspension before it went into effect, and by notifying him of his right to appeal the suspension.

### A. Missouri Requires Specific Pre–Suspension Notice.

DFS asserts that it should not be required to tell a person accused of sexual

otherwise stated.

harassment any details about the nature of the allegations of sexual harassment before it investigates them. In support, it argues that if it had to give the suspended employee information about the nature of the charges then it would, in effect, have to conduct some investigation of the charges before an employee could be suspended pending investigation, for absent such a presuspension investigation it could not delineate the events and acts supporting the allegations it was investigating. This, it argues, would be circular and would deprive it of a tool—suspension pending investigation—necessary to protect fellow workers.

DFS also suggests that Section 36.370(1) specifically permits it to suspend employees before it has conducted any investigation. The portion of this statute relied on by DFS states:

> An Appointing Authority [such as DFS] may, for disciplinary purposes, suspend without pay any employee in his division for such length of time as he considers appropriate, not exceeding twenty working days.... In case of a suspension, the director shall be furnished with a statement in writing specifically setting forth the reasons for such suspension. Upon request, a copy of such statement shall be furnished to such employee. *With the approval of the director, any employee may be suspended for a longer period pending the investigation or trial of any charges against him. ...*

§ 36.370(1) (emphasis added).

We disagree with DFS's contention that this section of the statute permits it to suspend an employee during an investigation without giving the employee notice of the allegations against the employee. The statute authorizes suspension of an employee by an appointing authority, but only up to a limit of twenty days and only for disciplinary reasons.[3] Moreover, Section 36.370 specifically requires that in the case of any suspension over five days in length, an employee so

requesting *shall* be furnished with a copy of "a statement in writing *specifically setting forth the reasons for such suspension*" (emphasis added). Thus, Section 36.370 itself requires that *specific* reasons for the suspension must be given to the employee.

■ In addition, we note that the Code of State Regulations (CSR) implements Section 36.370 by setting out detailed procedures which appointing authorities (such as Mr. Cade's DFS supervisors) must follow in suspending an employee. These regulations required DFS to provide Mr. Cade with both specific reasons for his suspension and an opportunity to respond to the reason *prior to* his suspension, stating:

> Any employee being suspended shall be furnished with a statement in writing *specifically setting forth the reasons for the suspension*. A copy of the statement shall be furnished to the director. No suspension of a regular employee for a period longer than five (5) workdays shall take effect unless prior to the effective date, the appointing authority gives to the employee *a written statement setting forth in substance the reason*, informs the employee of appeal rights, provides the employee with an opportunity to respond to the reason prior to the effective date, and files a copy of the statement of the reason with the director. Any regular employee who is suspended more than five (5) workdays may appeal in writing to the board within thirty (30) days after the effective date thereof setting forth in substance reasons for claiming the suspension was for political, religious or racial reasons or not for the good of the service, as provided in 1 CSR 20–4.010(1)(D) and section 36.390, RSMo.

1 CSR 20–3.070(3)(A) (emphasis added). Rules and regulations, if duly promulgated, have the force and effect of law. *Prenger,* 845 S.W.2d at 78; *Boot Heel Nursing Ctr.,*

---

**3.** Longer suspensions are permitted *only* if approved by the Director "pending the investigation or trial of any charges against him." *Id.* We need not decide whether such a longer suspension pending investigation of the sexual harassment claims against Mr. Cade is permitted

by the latter language, or whether, as Mr. Cade suggests, the use of the word "charges" means this longer suspension applies only to "criminal" charges. This is irrelevant, for here Mr. Cade was suspended only for twenty days.

*Inc. v. Missouri Dep't of Social Servs.,* 826 S.W.2d 14, 16 (Mo.App.1992).

DFS offers no reason why it was not required to abide by this regulation. We find that it failed to do so. While Missouri cases have not addressed the specificity required to meet the requirements of Section 536.370 and 1 C.S.R. 20–3.070(3)(A), we have construed a similar "specificity" requirement in Section 36.380, which governs the dismissal of employees. We have found that "the purpose of the requirement of the statute that the substance of the reason for dismissal be set forth, and under [the supplementing regulation] that specific instances be set forth as to incompetency or inefficiency, *is so [the employee] can protect himself . . . ."* *Holley v. Personnel Advisory Bd.,* 536 S.W.2d 830, 832 (Mo.App.1976) (emphasis added). *See also Brixey v. Personnel Advisory Bd.,* 607 S.W.2d 825, 827 (Mo.App.1980); *Giessow v. Litz,* 558 S.W.2d 742, 749 (Mo.App.1977). Similarly, under Section 36.370, Mr. Cade was required to have sufficiently detailed notice so that he could protect himself from unfair suspension. The notice he received on August 27, 1993, did not meet that standard.

### B. Mr. Cade Had A Property Interest in His Job.

Our interpretation of these statutes and regulations is in accordance with, and indeed is required by, fundamental principles of due process. Due process also assists us in determining just what kind of notice was required to be given to Mr. Cade.

■ To invoke the protections of procedural due process, a person must have been deprived of a property or liberty interest recognized and protected by the Due Process Clauses of the United States and Missouri Constitutions. *Moore v. Bd. of Educ.,* 836 S.W.2d 943, 947 (Mo. banc 1992). Property interests are created and defined by rules or understandings that originate in sources such as state law.[4] For employees to have a property interest in their employment, they must have a legitimate claim of entitlement to it.[5] This claim typically arises from contractual or statutory limitations on the employer's ability to terminate an employee. The hallmark of a property interest is an individual entitlement grounded in state law which cannot be removed except "for cause."[6]

■ Mr. Cade was a regular employee under the state merit system. § 36.020(10). Because regular, nonprobationary employees of the state may be discharged only "for cause," under state law he had a constitutionally protected property interest in his continued employment.[7] As such, under Missouri law he had a right to notice and a hearing prior to being discharged from his employment. *Moore,* 836 S.W.2d at 947; *Belton,* 708 S.W.2d at 137–38; *Chapman v. Bd. of Prob. & Parole,* 813 S.W.2d 370, 371 (Mo. App.1991). Indeed, the United States Supreme Court has gone so far as to say that "the root requirement" of the Due Process Clause is "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494, 503–04 (1985) (quoting *Boddie*

---

4. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494, 501 (1985); *Board of Regents v. Roth,* 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); *Belton v. Bd. of Police Comm'rs,* 708 S.W.2d 131, 136 (Mo. banc 1986); *Walker v. Personnel Advisory Bd.,* 670 S.W.2d 1, 3 (Mo.App. 1984).

5. *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561; *Pace v. Moriarty,* 83 F.3d 261 (8th Cir.1996); *Winegar v. Des Moines Indep. Community Sch. Dist.,* 20 F.3d 895, 899 (8th Cir.), *cert. denied,* 513 U.S. 964, 115 S.Ct. 426, 130 L.Ed.2d 340 (1994).

6. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 430, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265, 274

(1982); *Walker,* 670 S.W.2d at 3; *see Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *Winegar,* 20 F.3d at 899.

7. *McCall,* 863 S.W.2d at 642; *Prenger,* 845 S.W.2d at 77–78; *Chapman v. Bd. of Prob. & Parole,* 813 S.W.2d 370, 371 (Mo.App.1991); *see Kennedy v. Robb,* 547 F.2d 408, 413 (8th Cir. 1976) (so ruling under Missouri law), *cert. denied,* 431 U.S. 959, 97 S.Ct. 2687, 53 L.Ed.2d 278 (1977); *Belton,* 708 S.W.2d at 137 (ruling that under section 84.600 nonprobationary police officers have a property interest in continued employment since they may be discharged or removed only "for cause").

*v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971)) (emphasis in original).

■ Prior Missouri cases have not had occasion to address whether an employee's property interest in his job also entitles him to protection from *suspension* without due process. Courts in other jurisdictions, however, have repeatedly held that state laws giving employees the right to certain notice or procedures before suspension, or allowing suspension only for cause, thereby create a property interest in the job which entitles the employee to adequate due process protections prior to suspension.[8] As noted above, Missouri statutes such as Section 36.370(1) similarly give employees who are to be suspended for more than five days the right to specific written notice prior to suspension and permit suspension only for certain causes set out 1 CSR 20–3.070(2). We thus find that Missouri government employees are similarly entitled to due process protections of their property interest in their jobs prior to suspension for more than a five-day period.

### C. What Notice Was Required.

■ Having determined that due process protections were implicated by Mr. Cade's suspension without pay, we must now determine whether the notice received by Mr. Cade was adequate. In order to so determine, we in effect must decide how much

pre-suspension process is due an employee. *Loudermill*, 470 U.S. at 541, 105 S.Ct. at 1492, 84 L.Ed.2d at 503; *Belton*, 708 S.W.2d at 137.

At the most fundamental level, due process requires that a person facing the deprivation of a property interest must receive notice and an opportunity for a hearing "appropriate to the nature of the case." *Moore*, 836 S.W.2d at 947; *Belton*, 708 S.W.2d at 137 (citing *Loudermill* and *Roth* ). The opportunity to be heard must be given at a meaningful time and in a meaningful manner. *Id.*

The Supreme Court has adopted a balancing test to be used in determining the degree of process one must be accorded. *See Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33 (1976). The *Mathews* test balances three interests: (1) the private interest affected by the action; (2) the risk of an erroneous deprivation of that interest under the procedures being used; and (3) the government's interest in resolving the matter without being unduly burdened by additional or substitute procedural requirements.

In analyzing the first *Mathews* factor, we find that Mr. Cade's interest in his job was significantly affected by the suspension imposed by DFS. Mr. Cade had an important and protected interest in seeing that his employment and receipt of the benefits of that employment was not interrupted for a significant period. *Belton*, 708 S.W.2d at 138. The

---

**8.** *See Goss v. Lopez*, 419 U.S. 565, 573–74, 95 S.Ct. 729, 735–36, 42 L.Ed.2d 725, 734 (1975) (ruling that a state law giving students entitlement to public education created a property interest preventing suspension without due process); *Jones v. City of Gary*, 57 F.3d 1435, 1440–41 (7th Cir.1995) (ruling that a city ordinance allowing firemen to be suspended only "for cause" created a protected property interest); *Winegar*, 20 F.3d at 899 (noting the parties' agreement that a teacher had a protected property interest stemming from a state law establishing a continuing contract that prevented his four-day suspension without pay without due process); *Bartlett v. Fisher*, 972 F.2d 911, 915 (8th Cir.1992) (ruling that due process standards explained in *Goss* apply to suspension of Missouri highway patrol trooper who has a property interest in retaining his job); *Bailey v. Kirk*, 777 F.2d 567, 574–75 (10th Cir.1985) (ruling that city personnel policy allowing suspensions only "for cause" created a property interest preventing a

sheriff's four-day suspension without pay without due process); *Best v. Boswell*, 696 F.2d 1282, 1290 (11th Cir.) (ruling that state law investing state merit system employees with a protected property interest required notice and a hearing before they can be suspended), *cert. denied, Best v. Eagerton*, 464 U.S. 828, 104 S.Ct. 103, 78 L.Ed.2d 107 (1983); *cf. Listenbee v. City of Milwaukee*, 976 F.2d 348, 353–54 (7th Cir.1992) (ruling that a city employee's property interest in employment did not extend to suspensions because the state statute governing the suspension of city employees allowed them to be suspended for any reason); *Hughes v. Whitmer*, 714 F.2d 1407, 1415 (8th Cir.1983) (ruling that under a Missouri law leaving transfer decisions to the discretion of the Superintendent, a state trooper had no property interest in his troop assignment preventing transfer without a hearing), *cert. denied, Hughes v. Hoffman*, 465 U.S. 1023, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984).

twenty day suspension was for more than five days and was without pay, thereby depriving Mr. Cade of a primary benefit of his employment. In *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the Supreme Court noted the importance of depriving a person of pay, stating it had previously "recognized the severity of depriving a person of the means of livelihood." *Id.* at 543, 105 S.Ct. at 1494. *Cf. Federal Deposit Ins. Corp. v. Mallen,* 486 U.S. 230, 240, 108 S.Ct. 1780, 1789, 100 L.Ed.2d 265, 277 (1988) (noting that an employee's interest in remaining employed should not be "interrupted without substantial justification"). We conclude that Mr. Cade's suspension for twenty days without pay significantly affected his property interest in his job and that he thus had a due process right to adequate notice prior to being suspended without pay.

In regard to the second *Mathews* factor, we find that there was a substantial risk of an erroneous deprivation of Mr. Cade's interest by DFS's use of the very general kind of notice provided to Mr. Cade in the August 27, 1993, letter of suspension ("You are being suspended pending further investigation of charges of alleged sexual harassment of fellow employees by your actions which are perceived by them as created a hostile work environment...."). To require only notice of such broad generalities would be to render Mr. Cade's due process protections worthless. Almost any type of vague allegation could be used to temporarily suspend an employee, no matter how groundless or unsupported by facts, and the employee would have insufficient information to prepare a meaningful response. A direct relationship exists between the information provided the employee and the risk of erroneous deprivation: the less specific the information provided to the employee, the greater the risk of erroneous deprivation. Requiring more specific notice of the allegations will reduce this risk.

In regard to the third *Mathews* factor, we find that giving employees such as Mr. Cade

additional and more detailed notice will not unduly burden DFS or other government agencies. Indeed, as we have already noted, applicable Missouri statutes and regulations already require that an employee be given specific reasons for suspension prior to the time the suspension becomes effective. While we agree with DFS that it has a great interest in ensuring that its personnel are not menacing others or violating the law, it has offered no evidence that providing Mr. Cade with a more detailed description of the allegations and allowing him a reasonable time to respond to them before the suspension without pay took affect would prevent it from protecting that interest.

To the contrary, DFS had already placed Mr. Cade on paid administrative leave; he was not even in contact with employees or clients of DFS at the time of his suspension. While courts have recognized that there may be emergency situations in which an immediate suspension is required, such a suspension was therefore not needed here. Even had it been, numerous courts have suggested that the various interests involved can all be protected by suspending the employee with, rather than without, pay.[9]

Applying these principles here, we find that Mr. Cade's initial twenty day suspension was invalid because he did not receive pre-suspension notice adequate to allow him to understand the nature of the allegations sufficiently to defend against them and oppose the suspension. We affirm the PAB's order to the extent that it so held. In so holding we do not, as DFS suggests, require a full hearing on the merits of the allegations against Mr. Cade before he could have been suspended during DFS's investigation. Rather, we mean simply that he was entitled to pre-suspension notice adequate to permit him to be heard at a meaningful time and in a meaningful manner by allowing him enough information to be able to defend the allegations and to present conflicting evidence in a timely manner. As the Eighth Circuit noted in addressing a similar issue regarding the type of pre-suspension notice

9. *See Loudermill,* 470 U.S. at 545, 105 S.Ct. at 1495, 84 L.Ed.2d at 505–06 (suggesting that government employers could avoid potential problems in suspending employees by suspending them with pay); *Everett v. Napper,* 833 F.2d 1507, 1512 (11th Cir.1987).

required, procedural due process requires, at a minimum, that the employee should have been given "an opportunity, prior to suspension and discharge, to make a rebuttal to the charges made against him." *Kennedy v. Robb*, 547 F.2d 408, 415 (8th Cir.1976). This amounts to more than the type of conclusory notice given here, but does not require a full evidentiary hearing. *Id.*

Because the August 27, 1993 notice provided by DFS did not meet this standard, it did not give Mr. Cade adequate due process notice of his suspension. Accordingly, the suspension was invalid.

■ Turning to DFS's twenty day disciplinary suspension of Mr. Cade on September 28, 1993, we find that it too failed to protect Mr. Cade's due process rights, for the suspension it ordered ran *retroactively*. He thus had already served the suspension before he received any notice of it at all. For the reasons just discussed, such post suspension notice does not comport with due process. The September 28, 1993 suspension was therefore also invalid.[10]

■ Because of our resolution of the notice issue and our consequent determination that Mr. Cade's suspensions were invalid, we do not reach the issue whether Mr. Cade's conduct constituted sexual harassment which would have justified a suspension should proper notice have been given. We simply hold that, should DFS decide to pursue the merits of the sexual harassment allegations against Mr. Cade further, it must first give him proper notice as required by Missouri statutes and by due process.[11]

■ As noted earlier, the PAB also ruled that Mr. Cade should be reinstated to his old position with back pay because he requested transfer only due to the unpleasant working environment created by the allegations

against him. We agree with DFS that the PAB did not have the power to order such relief under Section 36.390(5). That section provides that state employees who are dismissed, *involuntarily demoted,* or suspended may appeal as follows:

> Any regular employee who is dismissed or *involuntarily demoted* for cause or suspended for more than five working days may appeal in writing to the board within thirty days after the effective date thereof, setting forth in substance his reasons for claiming that the dismissal, suspension *or demotion* was for political, religious, or racial reasons, or not for the good of the service. Upon such appeal, both the appealing employee and the Appointing Authority whose action is reviewed shall have the right to be heard and to present evidence at a hearing which, at the request of the appealing employee, shall be public. At the hearing of such appeals, technical rules of evidence shall not apply. *After the hearing and consideration of the evidence for and against a suspension or demotion, the board shall approve or disapprove such action and in the event of a disapproval the board shall order the reinstatement of the employee to his former position and the payment to the employee of such salary as he has lost by reason of such suspension or demotion. . . .*

§ 36.390(5) (emphasis added).

The statute thus permits reinstatement of an employee who has improperly been involuntarily demoted and who has appealed his demotion. Mr. Cade voluntarily chose to request a demotion rather than continue to work with those who had made accusations against him. DFS did not require him to do so, however. Moreover, even had we believed the transfer was the equivalent of an involuntary demotion, it was not the subject of an appeal by Mr. Cade. He therefore was

---

10. Because we hold that the September 28, 1993 notice did not constitute pre-suspension notice at all, we do not reach the question whether the information it provided him about the allegations against him would have been adequate if the notice had been given to him prior to suspension.

11. Because it may be relevant in any further proceedings, however, we also note that the PAB committed an error of law when it determined in

its decision below that, while Mr. Cade did engage in conduct which fell within the terms of DFS's sexual harassment policy, he did not violate the policy because his purpose in engaging in the conduct was not sexual. As has been repeatedly recognized, the purpose of the conduct need not be sexual in nature. *See, e.g., Hall v. Gus Constr. Co., Inc.,* 842 F.2d 1010, 1014 (8th Cir.1988).

not entitled to reinstatement, and the PAB erred in ordering him reinstated to his former position with back pay.

For the reasons stated above, we reverse so much of the PAB's order as required Mr. Cade to be reinstated in his old position with back pay and as reached the merits of the question whether Mr. Cade engaged in sexual harassment. We affirm so much of the PAB's decision as found that Mr. Cade received inadequate due process notice of his suspension and that both of his suspensions were improper and he is entitled to receive back pay for the period of his suspension. We remand for further proceedings in accordance with this opinion.

All concur.