Stephen REEVES, Superintendent, Fulton State Hospital, Appellant,

v.

David SINGLETON, Respondent.

No. WD 56260.

Missouri Court of Appeals, Western District.

May 18, 1999.

Hugh L. Marshall, Atty. Gen., Kansas City, for Appellant.

John L. Patton, Columbia, for Respondent.

Before Presiding Judge LAURA DENVIR STITH, Judge HAROLD L. LOWENSTEIN, and Judge ALBERT A. RIEDERER.

LAURA DENVIR STITH, Judge.

Appellant, Stephen Reeves, the Superintendent and Appointing Authority of Fulton State Hospital (the Hospital), appeals the decision of the Personnel Advisory Board (PAB) ordering him to reinstate Respondent, David Singleton, to his former position and pay him back pay accrued during the time of his dismissal. The Hospital argues the PAB erred because the totality of the circumstances sur-

rounding Mr. Singleton's refusal to take a urinalysis drug screen provided the Hospital with a reasonable suspicion that Mr. Singleton was a drug user and justified his dismissal for refusing to take the drug test. We disagree, and affirm the PAB's reinstatement of Mr. Singleton with back pay.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On April 2, 1996, the Fulton State Hospital facility nurse, Louise Mitchell, received a telephone call from an anonymous caller, who complained of having to work with "potheads." The caller reported that Mike McDonald, a security aide at the hospital, had been smoking marijuana that day during his morning break. The caller told the nurse he would identify himself and reveal the name of another worker who also used drugs if everything "went O.K." with his reporting. The nurse relayed the information to Superintendent Reeves, who summoned the Director of Security to take Mr. McDonald to the nurse for a drug screen.

Mr. McDonald was escorted to the nurse's office and was told that Mr. Reeves requested that he have a drug screen. Mr. McDonald refused to undergo the drug screen without first speaking with his attorney. As a result, Mr. Reeves placed Mr. McDonald on administrative leave and required him to turn in his identification badge and keys. He was escorted to his car and told to leave the premises.

A few hours later, at approximately 1:10 p.m. that same day, the facility nurse, Ms. Mitchell, received another call from someone whose voice she believed was the same as that of the anonymous morning caller.

The caller again refused to identify himself, but told the nurse that another hospital security aide, David Singleton, also used drugs while on duty. The caller did not state how he knew this, nor did he identify what drugs had been used or when or where this use had occurred. The nurse reported this information to Mr. Reeves, who requested that the security officer have Mr. Singleton submit to a drug screen when he reported to work that afternoon for the evening shift.

When Mr. Singleton arrived at work at 2:45 p.m. that afternoon, he found a note on his schedule telling him to report to his supervisor. Mr. Singleton's supervisor told him to go to the security office. Two security officers escorted him to the nurse's office, but, as they approached, Mr. Singleton said he was sick and was not going inside.[1] According to security officer Wilson, Mr. Singleton stated that Mike McDonald told him that he had been asked to take a drug screen and that he was not going to take a drug screen based on an anonymous call.[2] Mr. Singleton was informed that he could be terminated if he did not take the test, but Mr. Singleton replied that he was sick and was going home. The officer then requested Mr. Singleton to return his identification and keys. Mr. Singleton did so and went home.

The next day, April 3, 1996, the Hospital terminated Mr. McDonald and Mr. Singleton for their refusals to take the drug screen test. The Hospital's letter to Mr. Singleton stated:

> The specific reason for this action is *your refusal to take a urine drug screening test which had been ordered because of a report that you were abus-*

---

1. Mr. Singleton testified that he had been sick a few days earlier and had called to say he was sick earlier that day, but was told that he had to come into work. The Hospital did not deny such a call was made, nor did it admit it. The PAB did not address whether Mr. Singleton had tried to call in sick earlier, nor did it rely on his claim of sickness at the time of the requested drug screening.

2. Mr. Singleton said that it was a different Mike who told him about the drug screen, but the PAB accepted Mr. Wilson's testimony that Mr. Singleton had said that Mike McDonald was the one who told him about the drug screen request.

*ing drugs while on duty.* On April 2, 1996 you were escorted to the Employee Health Nurse's Office and told by Security Officers that you were brought there for a drug screen. You said you knew that and had been contacted by another employee. Although you were told you could be terminated for refusing to take the test you said you were not going to take the test because of an anonymous call. You said you were sick and were going home, at which time you were allowed to leave.

We have an obligation to protect our clients from negligent care which is provided by employees who may be impaired by drugs or alcohol, or who may offer these things to our clients. It is even more critical for someone such as yourself who is assigned to a security area. *Your refusal to cooperate with the urine drug screen constitutes insubordination and is grounds for dismissal.* (emphasis added).

Mr. Singleton appealed his dismissal to the PAB on April 26, 1996, claiming his dismissal was made without good cause and violated his rights to due process of law. Following a hearing, the PAB issued its findings of fact and conclusions of law, stating:

The Appointing Authority had insufficient basis for reasonable suspicion. The content of the call provided nothing to show that the caller was honest or his information reliable.... The caller failed to state when and where the Appellant [Singleton] was using drugs at work, what drug he used, and how the caller came to know the information.... That is not the kind of call from which a person can infer that the caller is honest or provides reliable information.

The Appointing Authority argues that McDonald's call to the Appellant about his refusal to submit to the drug screen tends to confirm the caller's allegation of drug use. That one employee calls another about such a matter does not – other than in conjunction with the anonymous call – tend to show illegal activity.

. . . .

Without reasonable suspicion, the Drug Free Workplace Policy did not require the Appellant to submit to a drug test. Therefore, the Appellant's refusal was not insubordination under 1 CSR 20–3.070(2)(K), and there was no cause to discipline him under section 36.380, RSMo 1994.

The PAB ordered the Hospital to reinstate Mr. Singleton and to pay him all lost salary resulting from the dismissal, less his earnings from other employment during his period of dismissal, as reduced by his attorney's fees in seeking reinstatement and back pay, under *Wolf v. Missouri State Training School For Boys,* 517 S.W.2d 138 (Mo. banc 1974). The Hospital filed a Petition for Review with the circuit court, which affirmed the PAB's ruling that Mr. Singleton should be reinstated, but remanded for a redetermination of the amount of back pay in light of our Supreme Court's recent decision in *McGhee v. Dixon,* 973 S.W.2d 847 (Mo. banc 1998). The Hospital now appeals the affirmance of the PAB's order in favor of Mr. Singleton.

## II. STANDARD OF REVIEW AND JURISDICTION OF THIS COURT

We review the decision of the PAB, not the circuit court's judgment. *Division of Family Services v. Cade,* 939 S.W.2d 546, 550 (Mo.App.1997). We defer to the PAB's findings of fact and will uphold its decision unless we find the decision "is in excess of jurisdiction, unsupported by competent and substantial evidence, or is arbitrary, capricious, or unreasonable." *Burgdorf v. Bd. of Police Comm'rs,* 936 S.W.2d 227, 230 (Mo. App.1996), *citing Ogden v. Henry,* 872 S.W.2d 608, 611 (Mo.App.1994). In making this determination, we consider the evidence in the light most favorable to the PAB's decision. *SGOH Acquisition,*

*Inc. v. Mo. Dep't of Mental Health,* 914 S.W.2d 402, 404 (Mo.App.1996).

 Mr. Singleton has filed a motion to dismiss this appeal. In support, he argues that, because the circuit court remanded the case to the PAB for redetermination of back pay and attorney's fees in light of *McGhee,* there is, as yet, no final judgment, and appeal is premature. We disagree. A remand by the circuit court precludes finality only where the remand is for the purpose of enabling the PAB to enter findings necessary for judicial review. *See, e.g., Giesler v. City of Ste. Genevieve,* 943 S.W.2d 793 (Mo.App.1997). Where, as here, the basis of the circuit court's remand is the circuit court's holding, on the merits, that the PAB erroneously decided a legal issue, then the aggrieved party has a right to appeal that legal decision to this Court. *Campbell v. Labor & Indus. Relations Comm'n,* 907 S.W.2d 246 (Mo.App.1995). And, as noted, once appeal is made to this Court, we review the decision of the PAB, not that of the circuit court, and the latter drops out of the case. *Cade,* 939 S.W.2d at 550. We therefore deny the motion to dismiss the appeal.[3]

## III. THE HOSPITAL DID NOT HAVE REASONABLE SUSPICION TO ORDER A DRUG SCREEN AND THEREFORE COULD NOT TERMINATE MR. SINGLETON FOR REFUSING THE DRUG SCREEN

 As a state employee, Mr. Singleton had a property interest in his job. *McCall v. Goldbaum,* 863 S.W.2d 640, 642 (Mo. App.1993). As such, he could only be terminated for "good cause." Pursuant to Section 36.380, RSMo 1994, a State employee may be terminated for good cause by an appointing authority, "when [the authority] considers that such action is required in the interest of efficient administration and that the good of the service will be served thereby." § 36.380. Here, the Hospital stated its grounds for dismissal as insubordination based on Mr. Singleton's refusal to submit to a drug screen while on duty, pursuant to hospital policy.

 It is well-established that a urinalysis drug test required by a government employer for the purpose of detecting drug use is a search subject to the Fourth Amendment, and, therefore, must be reasonable. *Benavidez v. City of Albuquerque,* 101 F.3d 620, 623–24 (10th Cir. 1996); *Ford v. Dowd,* 931 F.2d 1286, 1289–90 (8th Cir.1991); *McDonell v. Hunter,* 809 F.2d 1302, 1307–08 (8th Cir.1987). It is equally well-settled that, in the government employment context, a warrant will be required unless the intrusion is based on either reasonable suspicion or what is termed the "special needs" exception. *Id.* The "special needs" exception permits drug testing of employees in safety-sensitive positions, such as prison guards, pursuant to a random or uniform selection process, and such random drug testing does not require probable cause or even reasonable suspicion to believe that a par-

3. Because the circuit court's decision was rendered a nullity upon appeal to this Court, its remand was necessarily also rendered a nullity. If the Hospital wanted to appeal the PAB's method of determining back pay and attorney's fees, and request remand for redetermination of those matters in light of *McGhee,* or if Mr. Singleton wanted to argue that his back pay should not have been reduced by the amount of his outside earnings, *see McGhee,* 973 S.W.2d at 850 (Holstein, J. concurring), it was thus incumbent on them to appeal those issues to this Court. In this Court, however, the Hospital has raised only the issue whether the Hospital had reasonable suspicion to request Mr. Singleton to undergo a drug screen. Neither it nor Mr. Singleton have briefed or argued the correctness of the PAB's decision as to back pay and attorney's fees. Issues and questions not properly presented in the Points Relied On will be considered abandoned. *See, e.g., Jos. A. Bank Clothiers, Inc. v. Brodsky,* 950 S.W.2d 297 (Mo. App.1997); *Hedrick v. Chrysler Corp.,* 900 S.W.2d 233 (Mo.App.1995). Therefore, any errors in the PAB's back pay and attorney's fee determination are considered waived and the PAB's determination of those issues stands as final.

ticular employee might be impaired. *See McDonell*, 809 F.2d at 1307–09.

■ Here, the State argues that Mr. Singleton occupied a safety-sensitive position as a security aide at a State hospital for the criminally insane. Thus, the Hospital could have adopted a random drug testing policy if it were concerned about the potential of drug use among its staff. In this case, however, the request that Mr. Singleton take a urinalysis drug screen was not made pursuant to a uniform or systematic random selection plan, but instead was based solely on the basis of the anonymous tip. Therefore, under the cases just discussed, the "special needs" exception is simply inapplicable.

■ In the absence of a "special needs" random or uniform selection process, drug testing of a government employee may also be justified, without first obtaining a warrant, if it is based on individualized suspicion, i.e., a reasonable suspicion that the employee was engaging in unlawful activity involving controlled substances. *Benavidez*, 101 F.3d at 624; *Ford*, 931 F.2d at 1292. A reasonable suspicion is more than a "hunch;" it instead is created when it is objectively reasonable to conclude from available information, considered alone or in light of the totality of the circumstances, that the alleged misconduct has occurred. *State v. Slavin*, 944 S.W.2d 314, 319 (Mo.App. 1997).

■ The request that Mr. Singleton take a drug screen was made based on the Hospital's receipt of an anonymous telephone call naming Mr. Singleton as a drug user. As the State admits, an anonymous tip such as this cannot, without more, provide the basis for reasonable suspicion. *State v. Curtis*, 931 S.W.2d 493, 495 (Mo. App.1996), *citing Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). Rather, information obtained from an anonymous informant must be corroborated before forming the basis for a reasonable suspicion and the authorities using the information must demonstrate its reliability. *Id.; State v. Miller*, 894 S.W.2d 649, 653 (Mo. banc 1995).

Had the caller been asked for or offered details about the alleged drug use, and had the Hospital been able to corroborate those details, then it may well have had a basis to form a reasonable suspicion of drug use sufficient to justify a request for a drug screen. Here, however, the caller remained unidentified and did not state how he knew Mr. Singleton used drugs, or identify what drugs had allegedly been used, or when or where this use had occurred, and no attempt at corroboration was made.[4] On these facts, we agree with the PAB (and the circuit court) that the information obtained from the anonymous call did not itself form the basis for a reasonable suspicion, and thus did not, by itself, justify the drug screen.

■ Seeking to avoid the effect of its inability to show reasonable suspicion solely based on the anonymous calls, the Hospital argues that it simply *requested*, rather than ordered, Mr. Singleton to submit to a drug screen based on the calls, and that reasonable suspicion was not first nec-

4. The fact that the anonymous caller had earlier named another alleged drug user was not corroboration, for the Hospital did not find that the other subject of the anonymous calls in fact used drugs; it just fired him for refusing to take the test before he consulted his attorney. The Hospital also argued below that the fact the other accused employee, Mr. McDonald, was relaxed when told to take the drug screen showed he must have been high on marijuana at the time. The PAB rejected this argument out of hand, noting that there was no evidence in the record to support the conclusion that marijuana would cause the user to be relaxed in the face of such allegations. The argument is particularly surprising in light of the fact that the Hospital also tries to bolster its case against Mr. Singleton by citing to cases which state that nervousness under questioning can be relevant in determining whether reasonable suspicion exists. Apparently, the Hospital believes that it is both suspicious to be relaxed in response to a request for a drug screen, and suspicious to be nervous in response to a request for a drug screen.

essary to make such a voluntary request. Basically, the Hospital argues, there is no harm in asking. The Hospital then says that Mr. Singleton was terminated not for refusing this voluntary request, but for his suspicious behavior after the request was made. Specifically, the Hospital argues, it was suspicious that Mr. McDonald had called Mr. Singleton about the drug screen.

We reject the Hospital's argument. The only time the Hospital asked Mr. Singleton to undertake a drug screen was upon his arrival at work for the evening shift on the day the anonymous calls were made. At the time, he was told that he could be terminated for refusing the drug screen. We note that there is no evidence that he was asked for a new drug screen based on his allegedly suspicious comments after the Hospital says it simply requested him to voluntarily take the drug screen, nor is there any evidence the security officers who escorted him would have had the authority to make such an order without consulting Mr. Reeves. In this circumstance, the drug screen was a requirement; one is not terminated for insubordination for refusing a voluntary request.

 In any event, even if we were to consider Mr. Singleton's comments as he reached the nurse's office, it is well-settled that the refusal to permit a search cannot itself be bootstrapped into providing the reasonable suspicion needed to ask the person to undergo the search in the first instance. *Cf. State v. Miller*, 894 S.W.2d 649, 653 (Mo. banc 1995) ("any statement or observation obtained as the result of an illegal stop or seizure cannot be used to later justify the legality of the govern-

ment's actions"); *Slavin*, 944 S.W.2d at 319 (refusal to consent to search may not be used as support for the requisite reasonable suspicion to support the search). Yet, that is essentially what the Hospital argues. Moreover, like the PAB, we do not find the fact that Mr. McDonald may have told Mr. Singleton about Mr. McDonald's termination for refusing the drug screen aids the Hospital, for it "does not – even in conjunction with the anonymous call – tend to show illegal activity." [5] Similarly, the fact that Mr. Singleton realized without being told that there was no other likely reason to take him to the nurse's office at the start of his shift other than to take a drug screen is not in itself suspicious. Knowledge of facts and the ability to draw reasonable inferences from them is not a basis to find reasonable suspicion.

For these reasons, we find that the PAB's determination that the Hospital lacked reasonable suspicion to order a drug screen and, therefore, could not fire him for insubordination in refusing the drug screen, was supported by competent and substantial evidence. For this reason, the decision of the PAB is affirmed.

Judge HAROLD L. LOWENSTEIN and Judge ALBERT A. RIEDERER concur.

---

**5.** Contrary to the Hospital's argument, we do not find that *State v. Burkhardt*, 795 S.W.2d 399, 406 (Mo. banc 1990), requires a contrary result. In *Burkhardt*, the court simply stated that the officer was permitted to consider the defendant's statement that she would not tell him where to find "it" when deciding whether he had probable cause to search at the time he made his search. Here, as noted, the decision to require a drug screen was made before Mr. Singleton's comments, not after.

Moreover, as noted, Mr. Singleton's comments did not, in any event, provide a basis for reasonable suspicion. In this regard, we note that, contrary to the Hospital's argument in this Court, the PAB did not indicate it found Mr. Singleton's claim of illness relevant or suspicious, nor did it indicate whether it believed Mr. Singleton's statements that he had been sick a couple of days earlier and that he had tried to call in sick that day but was not permitted to do so.